case number 243545 United States of America v. Christos Karasarides and case number 243553 United States v. Ronald DiPietro. Oral argument is not to exceed 20 minutes per side with 10 minutes for each defendant. Mr. Lazarus you may proceed for the first appellant. Good morning you may please the court. Jeff Lazarus on behalf of Christos Karasarides Jr. I would like to reserve two minutes for rebuttal. In sentencing Mr. Karasarides the district court erred in setting the base offense level at 24. The defense detailed to the district court that the pre-sentence report was incorrect that the loss amount was over three and a half million dollars. The defense made detailed arguments to the district court at sentencing showing how the loss amount was not supported by a preponderance of the evidence and contained speculative conclusions. In response to these disputed guidelines issues the district court only stated that the PSR has quote correctly analyzed all the factors in this case. One single sentence to resolve all the disputed portions of the pre-sentence report. The district court failed to provide any analysis or any rationale to demonstrate how the loss amount had been proven by a preponderance of the evidence. This constitutes error under this court's precedence. Is this the rule 32 argument? Yes your honor, in part with the error of the base offense level itself. And your client was sentenced after D. Pietro was sentenced right? Yes later in the day. Can we look to what happened at his sentencing? In other words there was the argument that the redemption losses were speculative right because there were no records and the judge I think said no you know it's the best they can do that's fine. Is that something we can look at for your client especially since we're on plain error? Well your honor I would disagree that we're on plain error. I would look to this court's holding in United States v. White in which this court held that in determining whether there is a rule 32 error de novo review is used. Was there an objection here? Did somebody say hey you haven't complied with rule 32? The defense did not specifically say rule 32. This court does not require magic words what the defense did do is object to the court's finding. The defense raised this objection during the sentencing hearing and then at the end of the hearing re-raised the objection to the court's finding on the base offense level. The defense did not use rule 32 specifically but this court has held that strict compliance with rule 32 is required. Therefore we think that this court should follow de novo review. But we've applied plain error to rule 32 issues right? I believe your honor there are some cases in which the court has but I would direct the court to United States v. White where the court did not do that. Okay. Getting back to the court's question however. So your position is a plain error just doesn't apply to rule 32 objections? You don't ever have to raise rule 32 you just raise it on appeal? No your honor in this case in which the defense did raise a substantive objection to the court's finding the fact that he did not say rule 32 however does not prevent this court from using de novo review. So in that situation we would say that the court should be looked at de novo review. But getting back to the court's question about what happened at Mr. DiPietro's sentencing. The court is correct that Mr. DiPietro's sentencing occurred earlier in the day. Mr. Karasiridis and his lawyer were not present during Mr. DiPietro's sentencing. Their sentencing happened afterwards. They were not put on notice of the court's finding. They did not know until much later that the court had made those rulings on the pre-sentence report. They had no notice and therefore with traditional notions of due process the court erred and whatever was said in Mr. DiPietro's sentencing hearing does not apply to Mr. Karasiridis. And I would direct the court to this court's holding United States v. Coppinger 775 F3rd 799 in which this court did hold that notions of notice and due process do apply to sentencing objections in similar types of fashion. So can you focus on the substance then of what was wrong with the calculation of the loss? Yes, Your Honor. We believe that there are three things. First of all, the loss amount that the court found includes the co-conspirators tax losses. The government at sentencing changed positions. While they had originally held that those were properly calculated at the sentencing hearing, the government changed its position and said that those tax losses should not be included. The fact that the government changed positions and disagreed with the finding of the pre-sentence report only underscores the district court's failure to address these factual issues and these guidelines objections. So the government in effect is agreeing with you that the tax loss should not include co-conspirator amounts? Is that what you're saying? That is what the transcript shows and that's what the government's... Wasn't there an argument though that that was a mistake? That one sentence in the transcript couldn't have meant what it said it said? I mean we just have the transcript. Yeah, but it's one sentence, right? That's all. Okay. And Your Honor, I believe that highlights the need for the district court to get into these factual disputes to detail why the district court was agreeing with the pre-sentence report. The district court shedding light on these types of issues may have underscored the government's position. Here we don't have that record. Here we only have the transcript. So getting to the merits then, should the co-conspirator amounts properly be included in the calculating your client's tax loss? No, Your Honor. It was it's a position of the defense that these do not count as relevant conduct under the guidelines. That these tax losses that co-conspirators making their own tax claims falsely was not reasonably foreseeable by Mr. Karasarides. That under the relevant conduct rules under 1B1.3 that this is it was improper to include those losses and seemingly the government... What's the best authority you have for that? Your Honor, I look to the... I mean I don't have a case offhand. I would just look to the relevant conduct rules, the commentary that talk about what is reasonably foreseeable. It was not reasonably foreseeable that Mr. Karasarides would know that his co-conspirators would independently go to their tax accountants and make false returns. That was not... never anything discussed. There's nothing in the record that shows that Mr. Karasarides had those discussions about fraudulent tax returns with his co-conspirators. We also would look to the speculation here regarding the differences in the Shamrock and the Redemption, which are the two gambling parlors here. Here we have two different gambling parlors, one of which the government relied on records to obtain a loss amount and one that there are no records for. So what could the government do then, given that there were no records for Redemption? But it was acknowledged that Redemption was doing the same kinds of activities as Shamrock. It was doing the same kinds of activities and there was testimony that the one in which they did not have records for, the Redemption, had more patrons and more machines. But to conclude that they had an equal amount of revenue or even a greater amount of revenue is complete speculation. But what if, this goes to Judge Moore's question, what if the bad guys like destroy all the records or whatever? I mean you're better off destroying every record that you have and then you go into court and say, ah, you can't prove that I stole any money because there are no records. I suppose in that case, in which there is some sort of additional criminal act, that the court can do that. In this case we don't have that. However, there has to be some sort of reasonable conclusion under the 2B1.1 guidelines that the court has to make a reasonable estimation of loss. But is it reasonable to say if these are the same guys that are involved in Shamrock and Redemption and for whatever reason they're not keeping records in Redemption, that we're going to assume that it's the same amount? Your Honor, may I finish? Yeah, please. Your Honor, the court has to make a reasonable estimation of loss. There has to be some sort of an estimation to just say one for one and the court to just agree that that's a good enough is not good enough. There should have been testimony or some type of something done at the sentencing hearing for the government in order to Okay, and I know your time is up, but you said you had three reasons. What's the third? The third reason is that the tax evasion amount, the 3.1 million dollars and the unreported income, the $849,000, we believe that counting both of those was double counting, that there is an overlap between the tax evasion and the unreported gambling income. For those reasons, we ask the court to vacate the sentence and remand the district court for resentencing. Thank you. Thank you. Good morning, may it please the court. Benton Martin on behalf of Ronald DePietro. I'm also reserving two minutes for rebuttal. Well, we raised five claims of error in regards to Mr. DePietro. I'd actually like to focus today on a similar issue as to Mr. Karasaridis, which is the district court's announcement of loss determination. And the problem that we see is that Mr. DePietro made several very specific, particularized, and I believe non-frivolous arguments in regards to why the loss amount should be different. And the district court, in response, said that he thought the loss computations were as accurate as they can be because the government was working with accountants and other professionals. The problem that we have with that is that it's really non-responsive to the arguments, the particular arguments that were being made by Mr. DePietro, who was making arguments about not being held accountable for acquitted conduct. I list six specific arguments that I believe he was making. One of them was acquitted conduct. One of them was the scope of relevant conduct. And on that point, he stands in a very different position than Mr. Karasaridis and has all along, that's part of our severance issue, that there was no claim about Mr. DePietro's tax liability on its own. It was all his involvement with others. And so a lot, really everything, that he was being held responsible for was relevant conduct in terms of what other co-conspirators had engaged in. So you're saying that he did not himself engage in any conduct himself that led to improper tax payments? No. I think that would be too broad. He is, of course, he maintains his innocence throughout the trial, but for the purposes of sentencing, I think that the trickier part was that he was held responsible for all of the co-conspirators' acts and losses in terms of Mr. Katchner and Mr. Karasaridis. And there were specific... So it's the co-conspirator idea is the focus? Correct. So why shouldn't he be responsible for co-conspirator losses in a conspiracy such as this? I think that there are good reasons why he may have been held responsible for some of them, but I think that there needed to be a breakdown. When we, what was happening was there was a there's a table that's in the brief of the different tax years and how much they were going to hold him responsible for each year for both Katchner and for Karasaridis. Then there's a lump sum just called tax evasion for Karasaridis that was taken from some calculations done by Agent Ross. That is my third point of what I think that where I think there were a number of problems is that there was a redundancy between the tax loss that they were calculating over the years for Mr. Karasaridis and that lump sum of tax evasion. And were all these arguments made at the actual sentencing? I believe that they were, but by reference. When you look at what his attorney said at sentencing, number one he puts in written objections to the pre-sentence report and those are sitting before the court at the time of sentencing. And those hadn't been ruled on? Correct. Those were, if you look at the pre-sentence report, the way they're included now is that a summary of the defense objections to the pre-sentence report are included at the end of the pre-sentence report. And so these are all listed. But did somebody say, your honor, you said the loss computation was as accurate as it can be, you know, that's not enough explanation for why this loss amount. Can you give us more? And that goes to the standard of review. Right. So did somebody say at the Boston question, like, hey your honor, can you tell us, can you give us, you know, that's too vague. I'm not sure that's enough. Can you give us some more? I have two responses. The first is, what he said, he did not say it exactly like that. What his attorney did in objecting says, we are preserving the objections that we've previously made. That raises, I think that is close to the line in terms of whether he was saying, you know, you haven't given us enough. I think when I looked at this, he really hadn't given enough to say, to pick apart what his analysis was in terms of loss. Who's he? I'm sorry, the district judge. When his attorney objected, I think that there wasn't much he could do other than say, we're re-raising these loss objections. And that's what he did at the end of the sentencing. But I think even on plain error review, if that is what the court applies, we should prevail. I would point the court to the Wallace case, where on this same argument, in terms of a district court not responding or addressing and specifically rejecting non-frivolous arguments, the court found plain error. And I think this goes back to, I think the problem here really was that it was non-responsive. The district court's analysis, by saying accuracy, were not, they were never really, DiPietro's attorney was never really attacking the math. What he was doing was making more specific objections to, okay, carcerous tax evasion loss may be three million overall, but when you look at the years I was involved, there were years other people, and there was testimony, he was acquitted of one count in regards to, he wasn't preparing all of those taxes. Some of those taxes were performed by other people. And hey, there's redundancies here. He also argued... I mean, doesn't that come down to kind of the scope of the conspiracy and what co-conspirators can be tagged with? Right. I mean, it's going to do a lot of work here, it seems to me, right? I mean, everybody was evading taxes here. This is an illegal gambling operation. Nobody's going to report any income, right? I mean, that's pretty foreseeable that your co-conspirators aren't going to be reporting their income either. Right. No. I mean, it's kind of a risky take when you run an illegal operation, isn't it? Correct. And I think there are fair reasons to say no to some of Mr. DiPietro's arguments. I think the problem here was the response to them did not really respond at all to the specific arguments that he was making. But then how are your substantial, let's assume it's plain error, how are your substantial rights affected? Well, Mr. DiPietro... I mean, what else was the judge going to say? I think if he had broken down and looked at some of these specific issues, they were not frivolous. The redundancy, if you take off the amount that we believe was redundant, he also was arguing that some of this loss happened before the statute of limitations period ran out, and so that that shouldn't be counted against him. He was at ultimately 4.7 million. Looking at the objections that he made as a whole, it's not hard to get him down under 3.5 million, which would have reduced his guideline range by two points. And I think this this court has long established that when we have something that could affect the guideline range, and you could be a guideline range lower, it could have made a difference to his ultimate sentence. I'll save the rest for rebuttal. Thank you. Good morning, Your Honors. Joseph Severson for the United States. Let me start with the standard of review for the procedural objections about the tax loss finding. The standard review is plain error. I mean, that's clear under this court's precedent. You don't have to look any further than the en banc decision in Vonner. There, the court held that when there's a claim of procedural error about, you know, the court's ruling its sentence, and the Bostik question is asked, which it was asked here, they don't dispute that. And there's no objection that, hey, you needed to say more. That's reviewed for plain error. So I think I think that settles that issue. What do we do, I mean, we do say in white that we review compliance with Rule 32 de novo. What does that mean? Well, I mean, there was no issue raised to the standard of review in white. You know, if there's, you know, if the issue is preserved, then yeah, it's reviewed de novo. But if it's not preserved, then the standard of review is plain error. I mean, white came before Vonner as well. I mean, in subsequent cases dealing with Rule 32 error have applied the same rule. I mean, one case I can point you to is United States versus Bradley. You can find that at 897 F3rd 779. There, there was a Rule 32 objection that a loss finding was inadequate, and it was reviewed for plain error. So, so first. Do you agree there was, I mean, error? I mean, in terms of... No, no, I don't, I don't agree that there was error. I mean, did the judge... Where's the rule 32 finding with Karasidis on the, on this loss argument? Sure, a couple of points. I mean, first of all, I mean, you know, I mean, Karasidis' appellate counsel here says that, you know, that Karasidis and his counsel weren't present at this, at the, at the sentencing of DiPietro. That's false, and the record shows it. There, there are two points in the record where, yeah. But even if they're there, what do we do with that? I mean, can you say, oh, you were at the previous sentencing. I rejected the redemption speculation argument there, so the judge doesn't have to say anything. I mean, we've said the defendants are supposed to be treated as individuals. Even if they're co-conspirators, they're, you know, they're sentenced separately. It's a completely separate proceeding. I mean, can you say that? Okay. So, I mean, a couple of points on there. A couple of points on that, Your Honor. First, you know, first, I don't concede that there, that there wasn't enough of a ruling, even in Mr. Karasidis' hearing, at least, you know, simply just looking at the issue of rule 32 error. I mean, the court... The rulings are very terse. They are. Virtually nothing is said, except I'm going with the PSR calculations. Well, I mean, that's... Yes, I mean, the specific ruling, like, stated that, but look, under this court's precedent, I mean, a rule 32, you know, you satisfy rule 32 with a ruling, you know, and again, you can look to the court's decision, en banc decision in Bonner, to support that. You know, there, the court said that, you know, all you need is a ruling, you know, that doesn't have to, you know, the court doesn't have to sort of go on at length about a ruling to satisfy rule 32, you know. So I think, I think the court did enough here, even to Karasidis' hearing, even, you know, even leaving aside what happened with DPA trope. I mean, and you can look at the rest of the, you can look at the rest of the transcript to sort of see that. I mean, this isn't, this isn't a case like White, where, you know, the sort of, the court just blindly and summarily sort of adopted the PSR, you know. I would like you to point to where you see that difference. Sure. You know, I think you can, I think you can, you can find that difference in the way that the court sort of engaged, engaged with counsel first. I'll put it to you. I think the district court did virtually nothing in engaging with counsel on tax laws, and if you can show me some kind of analysis by the district judge at the sentencing, I will be forever grateful. Well, well, I mean, the district court did, you know, I think it is clear from this record that the court was considering, you know, that the court was listening and considering to the arguments. It didn't, it didn't just jump somewhere. Point to me what the district judge said on calculation of bots in either defendant's case that shows any analysis other than saying, oh, they're accurate. Well, I mean, so let's start with a statement of Mr. DiPietro's. So, I mean, the court just didn't say, say, oh, it's accurate. I mean, it said, it said they're as accurate as can be. I mean, and I think that was, that shows that the court was, well, no, I don't, I don't think it is under, you know, in this case, because, because there was this, you know, because there was this issue about the redemption losses. And I think what the court was saying there that, you know, given, given the destruction. What the court said is, in DiPietro, it's one paragraph. The loss computation is as accurate as it can be. They have the accountants and other professionals and the IRS is working on that. And I think their loss computations is as good as any. And there is nothing to dispute that really. And I think the loss computation is correct. You think that's an adequate analysis when your opponents are saying that they argued various discrete issues here? Well, I mean, let me, let me address that point first, Your Honor. I mean, they're, you know, they're misrepresenting what they actually argued at the sentencing hearings. You know, at Mr. DiPietro's hearing, I mean, you know, he talks about a number of issues that, you know, that were raised as PSR objections, but he never renewed those objections during the sentencing hearing. He raised only one issue during the sentencing hearing. That was his claim that, like, well, the loss was, was speculative because it used extrapolation to, to include the redemption losses. So first on the... Are you saying then that when he filed objections to the PSR that were not resolved, that he needs to reiterate them at the sentencing in order to get a ruling from the district judge? Yes, absolutely. That follows just from, from this decision's court, this court's decision of White. White said that, you know, to trigger a Rule 32 obligation, the court has to, or the, you know, the defendant has to actively raise an issue during the sentencing hearing, not anywhere in the proceedings. And none of those issues, none of them in the PSR, you know, in the PSR addendum for Mr. DiPietro were raised, or were actively raised at the sentencing hearing. He raised one different issue, that the redemption losses were speculative. And the court, the court in its ruling, you know, responded to that in a couple ways. I mean, first, you know, it, it indicated that, well, this was as good as we could do on that particular issue. You know, I mean, the defendants destroyed the record. You know, this, this, this is a case where, you know, I mean, the bad guys destroyed the record, just as Judge Albandian was talking about. So the court was recognizing, look, that's the best you can do. And second, you know, the court said, well, there's nothing to dispute that. I mean, and that was true as well. I mean, Mr. DiPietro offered, offered really nothing in response during the sentencing hearing. I mean, he just, he just vaguely, vaguely asserted that, oh, well, you know, this involves speculation, so it must be wrong. You know, he didn't do anything, you know, to counter the specific evidence that the government offered to refute that point. In particular, I mean, there was, there was more evidence on that point than, than the defendants were talking about. There wasn't just, there wasn't just testimony that, there wasn't just testimony that Redemption, you know, had more machines and was busier. I mean, that would have been enough, but, you know, there was also specific testimony from Jason Koechner, you know, who was, you know, you know, a cooperative, who testified, you know, who was an owner of Redemption in, in Shamrock. So he was getting profits from it as well, and he specifically testified there would be a conservative estimate to say that the Redemption profits were the same as Shamrock, because they were actually getting more. So, so I think, so first, so I think it was, you know, everything the district court said there was responsive to the arguments that were adequately raised, and that was enough. But even if you think it's not, you know, review here is for plain error, and it can't meet the other plain error prongs. First, you know, the second prong, clear and obvious, you know, even if, you know, even if on de novo review, you might find that these findings were inadequate, you know, I don't think they were clearly and obviously so. Is that just going to the question of the explanation that was given by the district judge? So shouldn't we be looking at the actual computations and saying, were the substantive arguments that were made by these defendants worthy of actual giving them credit, i.e. reducing the tax losses? So could we address the merits of the argument? Absolutely, I'd be happy to do that on it. So, I mean, I've already talked about, I've already talked about the Redemption loss being speculative. You know, the evidence, the evidence supported that. There was specific testimony from, you know, from Jason Kakner, you know, you know, was an owner, was getting a cut of the cash from, from both of these businesses that the Redemption was more profitable. And that was testimony at the trial? It was at trial. I mean, and that testimony was corroborated by a testimony of an employee of both businesses, Ronnie Hall, who said that, you know, Redemption was the, Redemption was the bigger business. It had a lot more patrons. That's the Redemption. You're saying Redemption is proper to treat it just like the other one. Right. So let me turn to the sort of co-conspirator issue. So, so first with respect to the argument that there was some kind of concession with respect to that. And that's just, that's just not supported by the record. Yes, there is that one stray statement. But, you know, I think at most that was a slip of the tongue by the prosecutor. You don't have to look any further than the next statement that the prosecutor made. After this supposed concession, he said, well, the law, you know, I think the loss calculation is as accurate as it could be. Now, if he had just conceded that it was wrong, he wouldn't have made that statement. I mean, and there's nothing else in the sentencing hearing that gives any indication that anybody thought that that was actually a concession. But, but in terms of the merits of the co-conspirator argument, how would you respond to their argument that the losses engendered by the co-conspirators should not be tagged to these two defendants? Sure. I'm happy, I'm happy to respond to that. I mean, so, so I mean, they were convicted on a number of accounts that bring these losses. And, you know, one of them is certainly, you know, the conspiracies here. So, I mean, so, you know, as Judge Nalbandian said, I mean, you know, it's, you know, I think it's pretty obvious that, you know, when you, when you enter into and you're convicted of a conspiracy here and the conspiracy, you know, one of the conspiracies was a conspiracy to defraud the IRS with respect to the profits of shampoo. And both defendants were convicted of that. And second, a conspiracy to defraud the IRS with respect to, you know, income on profits for redemption. And Mr. Karasuridis was convicted of that. So, you know, this just falls from the jury's verdict, you know, and it's, and it's well supported by the evidence here, you know, so, Mr., you know, with respect to Mr. Kachner's losses, I mean, Mr. Karasuridis told Mr. Kachner, you know, hey, go get your taxes done by Mr. DiPietro. You know, and Karasuridis, you know, already knew that, like, you know, DiPietro was not reporting, you know, any of the income from shamrock redemption that Mr. Karasuridis had. So, you know, I think it's, you know, it's clear from that, that, you know, that, you know, well, you could easily foresee, you know, that, oh, well, you know, we sent him to DiPietro, like, you know, those losses aren't going to get reported. And with respect to Mr. DiPietro, he wasn't just convicted of conspiracy. He was also convicted of, he was also convicted of, you know, filing false returns for Mr., for Mr., for Mr. Kachner and convicted of, you know, evading Mr. Karasuridis' taxes for earlier years. So. So you're saying there's evidence in the record at trial that supports tagging each of these two defendants with the co-conspirators? Absolutely. I mean, there's, there's an abundance of evidence, you know, some of, you know, some of which I just recounted. So I think, you know, I think the evidence, you know, sort of easily supports that, you know, so I don't believe that there's, that there's any error here. So, I mean, third, with respect to the overlap claim that the defendants make, you know, that's also not supported by the record here. The evidence showed that, you know, that, so there were, you know, there was one loss component here, which was, you know, related to the evasion of payment of Mr. Karasuridis' 2009 through 2014 taxes. And then there was a second loss component that related to, you know, the unreported income from Shamrock Indemption for 2012 to 2018. So, you know, so there's some overlap here, but the evidence showed that, like, the evasion, the evasion of payment losses, you know, that those were different sources of income. In particular, Karasuridis had two separate sources of income that were reported on those earlier year returns. You know, one, he, you know, he had some winnings from his own legal gambling. He went to casinos, he gambled, sometimes he won. Those returns reported that he was a professional gambler. Second, he was involved in sort of a different kind of gambling enterprise that involved sort of, you know, VS2 software. These were internet cafes. You know, the income that he, you know, the other income on a separate Schedule C that got reported in those other years came from that, and there was abundance of testimony sort of showing that. The revenue agent, Garrett Jordan, who, you know, who originally examined in 2009 and 2010 returns for Mr. Karasuridis, you know, testified that, you know, Mr. DiPietro, who represented Mr. Karasuridis in that audit, told him that that's, you know, that that's where that income came from. Mr. DiPietro gave the same story to Revenue Officer Ross when Revenue Officer Ross came to try to collect Mr. Karasuridis' unpaid taxes, and there were other witnesses, too, who testified that, you know, that they were involved with Mr. Karasuridis, you know, in these separate sort of VS2 cafes during that time period. Testimony like Thomas Helmick, his nephew, testified that he opened one of these with Mr. Karasuridis. Chris Maggiore testified that he opened another one with a defendant in Florida, and Anthony Bragg testified that he'd also opened one with Karasuridis around that time frame. So the evidence doesn't support, you know, that overlap objection. All right. Mr. Severson, could you also address the issue raised by DiPietro concerning the denial of a motion to sever the trial? Sure. Happy to do that. You know, I think that severance challenge fails, you know, under any standard of review here. You know, there's two components to it. First, you know, he offered his own sort of self-serving affidavit saying that, you know, that Mr. Karasuridis would testify. I think the district court properly and correctly found that, you know, in the absence of any indication from Mr. Karasuridis himself that he would testify and do so before his own trial, that that was incredible. So second, you know, DiPietro claims that, you know, that there was enough sort of spillover evidence that, you know, that the jury wouldn't have been able to sort of reliably determine his guilt here. You know, and I don't think the record supports that at all. You know, DiPietro was a central figure here. You know, he was a co-owner of Shamrock. He got the most profits from it. You know, and he was involved with, you know, hiding the profits from Shamrock and Redemption through all the lies that he told to the IRS in preparing Kaganer and Karasuridis' returns and his representation of DiPietro or his representation of Karasuridis before the IRS. So I think most of the evidence here would have come in in a separate trial. But, you know, even if there wasn't, you know, even if there was some overlap, you know, I don't think it would meet the exacting standard for, you know, for prejudice here. I mean, he's got to show, you know, this court has said it's fine if, you know, the evidence is against one co-conspirator is much greater than another. But what's our standard of review on the issue? Well, I mean, you know, everybody at least here concedes that it's at least plain error. You know, and I don't, you know, and that, you know, that clearly hasn't been met here. First, I don't think there's error. You know, it doesn't show in this sort of specific, compelling, actual prejudice. You know, and look, I mean, I think you can look to what the jury did here, you know, to conclude that too. You know, DiPietro was convicted or was acquitted on one count, you know, one count relating to preparing one of Kaganer's returns. And, you know, although we think the evidence was sufficient to support that count, I mean, there was evidence support. You know, there was evidence that DiPietro offered, you know, to challenge that count. He offered, you know, and, you know, a different person was listed as the prepared repairer on that return. She testified, and she said that she prepared the return without DiPietro's assistance. So, you know, I think that shows that, you know, even if there were some kind of, you know, spillover evidence, that the jury wasn't so inflamed by that that, you know, that it couldn't, you know, sort of reliably parse out the evidence and determine guilt and innocence. I mean, the court, the district court here even remarked that, you know, at the end of the trial that it thought that the jury had, you know, that all its verdicts were supported by the evidence and commended it for doing such a good job. So I think that fails on the merits. But, look, it's also at least, it's at least plain error, you know. And I think, given everything I said, it's certainly not clear. Obvious error, you know, and I don't think that there was any, you know, substantial prejudice here either. Because the evidence of DiPietro's guilt was overwhelming, you know. I mean, he was basically a count and caught red-handed with the secret books. I mean, he maintained to the record, you know, the showing all the profit, you know, all the profits from Shamrock over the years. And the government uncovered that when it carried out a search warrant, you know. And then there was a testimony, you know, there was consistent testimony of multiple witnesses involved here that implicated Mr. DiPietro. I mean, and he was also implicated by his own statements. I mean, he tried to contest a trial that he wasn't, you know, I didn't own Shamrock. But, you know, one of his own, you know, text messages admitted to trial, he said, I'm the owner. So I don't think there was any, you know, prejudice to the substantial rights either. I see that my time is up. If the Court has any more, doesn't have any more questions, we'd ask that you affirm the judgments of the District Court. Thank you. Your Honors, in this case, the District Court just did a summary adoption of the pre-sentence report with no findings. And at the end of the sentencing, defense counsel did a Bostick objection, objecting to the court's base offense level. Under that circumstance. But there was no objection to the procedure that the judge did, was there? That's correct, Your Honor. Okay, but that's what Bostick requires, is that if there is a procedural error in sentencing, it's required that there be an objection as to the procedure so the judge can correct the procedural error. The objection here goes to the merits, the substance of the pre-sentence report. It doesn't go to the procedure that the sentencing judge used. I mean, is that correct? Your Honor, I understand the Court's point. And therefore, we do review. Anyway, you have a problem. Your Honor, there are three cases that I would like to cite this Court's precedent in which the Court did find a Rule 32 error, where it does not seem that the words we object under Rule 32 were used. The whole point of a procedural objection is to allow . . . to put the sentencing judge on notice that his procedure didn't comply. And here, I think it's quite clear that if there is no procedural objection, it all goes to the merits. And therefore, you've waived it. Anyway, we review for maybe plain error. But if this Court does review for plain error, then I would ask the Court to find plain error. As my colleague stated, that this does have a substantial effect upon Mr. Quericere's rights. It affects his guideline range. Two levels in this case, given that he was given a 22-year sentence, two levels, is a substantial amount of time that he's spending in prison when the Court did not give an adequate review or an adequate ruling on the pre-sentence report objections. And therefore, we ask this Court to vacate the sentence and remand for resentencing. Thank you. Thank you. To address the point about the objections that were made by Mr. DiPietro's attorney during the sentencing hearing itself, he does, when he's addressing loss, make the argument that we believe all the information the Court has from the pre-sentence report and all the other information the Court has that it's speculative to put the level at over 3.5 million. I believe he was referring the Court back to his written objections. I don't, in standard practice, believe that there's an obligation, when you have written objections pending before the Court to the loss calculation, to repeat those verbatim. But you're saying, so let's say he didn't raise the Kachner's taxes specifically. And you're saying now, well, he didn't make a finding on that issue. Why wouldn't you have to, okay, fine, you have a written objection, but at the sentencing, sentencing is where he's supposed to make the finding. He doesn't make the finding, so at the very end of the sentencing, you should say, you didn't make the finding on this objection, so that he can correct the mistake. You can't just sit there on your hands and sandbag, right? So, I mean, that is the time to make the objection, is that sentencing, because your objection is to the procedures, to your lack of a finding. Well, certainly, and what that would do is put us plainly in plain error review. If his objection of saying, we're renewing our objections regarding loss amount, is not specifically procedural, it puts us in plain error. And I do, I point the Court to the Wallace case, where there was a finding of plain error, when the findings by the District Court, or the analysis of the District Court, I think the White case is also helpful, weren't sufficient. And the White case says, the Court may not merely adopt factual findings in the presentence report, or simply declare the facts are supported by a preponderance of the evidence. You're going back to a procedural error, as opposed to the substance of your objection. Correct. The procedural error is waived by failing to make, or to respond to the Bostic question. I mean, I think that's clear, what the law is. As to the merits, we review for plain error, as to whether the calculations are reasonable or not, but as to the judge's erroneous procedure in failing to make findings, which is totally procedural, you've waived it, by not objecting. Under this Court's law... No, okay, tell me, cite me a case. Wallace. It was not, they did not make an objection. To the procedure?  Okay. And they found that it was an error to not explain, on plain error, for specifically saying, plain error review applies to not objecting to the procedure. This is after the Vonner case? Yes. Well, Vonner says that. I was part of the Vonner case, and I know it will be held. Well, does Vonner say that it's waived, or does Vonner say it's reviewed for plain error? That's my understanding. My understanding is that Vonner... It's allowed because it's plain error. Because there was a question in the past whether you... The substance, the merits, is reviewed for plain error, not the procedure. That's all. Okay, you can argue all you want, but I signed on to Vonner. I think I know what it says. I understand. I would encourage the Court to look back at subsequent cases, and there is a distinction between, I mean, here he preserved, if we had made, if we were here making substantive arguments, we preserved those arguments in terms of the substance of the loss amounts. The procedural point was the one that was not specifically made as an objection, and this Court's precedent, Wallace and there's others, say that because that specific objection wasn't preserved, it's reviewed for plain error, and that Wallace in particular still reverses even on plain error review because the judge's analysis was not responsive to the defense's argument, which is why we believe the situation is here. Thank you. Thank you. Thank you all for your argument in the case. It will be submitted, and the clerk may call the next case.